THE CITY OF CHICAGO

*v.*

THOMAS H. HULBERT *et al.*

*Opinion filed October 26, 1903—Rehearing denied December 3, 1903.*

1. SPECIAL ASSESSMENTS—*city may appeal from order dismissing petition.* Under section 123 of the act relating to county courts a city may appeal from an order of the county court sustaining objections to a petition to confirm an assessment and dismissing the petition. (*City of Bloomington* v. *Reeves,* 177 Ill. 161, followed.)

2. SAME—*when judgment sustaining objections is not res judicata.* An order sustaining objections to a confirmation petition, when the cause was re-docketed, in accordance with the decision by the Supreme Court holding the ordinance invalid on appeal, is not *res judicata* in a proceeding to confirm a supplemental petition filed in pursuance of leave granted by the same order.

3. SAME—*when proceeding is "pending," within meaning of the act of 1897.* If an appeal from a judgment of confirmation was pending in the Supreme Court when the Local Improvement act of 1897 was passed, the cause must be regarded as pending, within the meaning of the saving clause in section 99 of such act.

4. SAME—*supplemental petition does not mean a supplemental assessment.* An order sustaining objections to a confirmation petition and granting leave to file a supplemental petition does not require the city to institute a supplemental assessment proceeding under section 59 of the Improvement act of 1897, but authorizes a new assessment under section 58 if the necessary facts therefor exist.

5. SAME—*defective ordinance may be made the basis of new ordinance.* An ordinance which has been held defective by the Supreme Court in matters of description may be the basis of a new ordinance for a new assessment for completed work, under section 58 of the Local Improvement act of 1897.

6. SAME—*ordinance will not be re-examined on second appeal.* All objections which might have been made against an ordinance will be presumed to have been urged on the first appeal, and the court will not examine it on a second appeal to discover other defects.

7. SAME—*effect where new ordinance does not cure defects in original.* That an ordinance for a new assessment for completed work does not cure the defects in description for which the original ordinance was held invalid, and that there were slight departures from the original ordinance in making the improvement, will not defeat the new assessment, where the city has accepted the work as satisfactorily complying with the ordinance.

8. SAME—*new ordinance for completed work need not describe improvement.* A new ordinance levying a new assessment for work com-

pleted under a prior ordinance which has been held invalid need not describe the improvement in detail.

9. SAME—*constitutional law—act prohibiting employment of aliens on public work is void.* Failure of the city or the contractor on a public improvement to observe the provisions of sections 10, 11 and 12 of the Aliens act, prohibiting, under penalty, the employment of alien laborers if they are to be paid from funds raised by taxation, does not invalidate the proceedings, since such provisions are unconstitutional and void.

10. SAME—*when new ordinance should not include interest on vouchers.* A new ordinance for an assessment to pay non-interest bearing vouchers issued for the balance due on completed work should not include interest on such vouchers; but the whole ordinance is not void if, from an inspection thereof, the amount so unlawfully included can be ascertained and eliminated.

APPEAL from the County Court of Cook county; the Hon. ORRIN N. CARTER, Judge, presiding.

In July, 1895, an ordinance was passed for the local improvement of a certain portion of Diversey street, in the city of Chicago, by curbing with limestone curbstones and filling and paving with cedar blocks upon hemlock plank foundation. On November 15, 1895, the appellant filed its petition in the county court for the making and confirmation of an assessment for such improvement. The estimated cost of the improvement was $25,536.43. The assessment was levied, and a large number of persons, including appellees, filed objections to the confirmation thereof. On the 18th of December, 1895, a judgment of confirmation was made and entered and the objections were overruled. The objectors, being represented by different attorneys, filed many objections, ranging from eighteen to thirty or more by each set of objectors, and by all of them it was objected that the ordinance authorizing said improvement did not specify the nature, character, locality and description of the proposed improvement, and that the ordinance was insufficient, uncertain and indefinite in its terms. The county court overruled the objections and confirmed the assess-

ment, with slight deductions in some instances. Appellees and others prosecuted an appeal from that judgment of confirmation to this court, and here insisted that the ordinance was insufficient and defective and void, because the nature, character and extent of the improvement were not sufficiently specified in the ordinance, and particularly that the flat stones upon which the curbing was to be imbedded by the terms of the ordinance, were not sufficiently specified. This court, on a consideration of the appeal, following the case of *Kuester* v. *City of Chicago*, 187 Ill. 21, reversed the judgment of the county court and remanded the cause, (*Boyd* v. *City of Chicago*, 187 Ill. 115,) on the ground that the ordinance in question was defective, in that the description of the flat stones was not sufficiently definite, as required by the statute.

On May 13, 1901, the cause, in the matter of the assessment under the original ordinance, was re-docketed and the remanding order and judgment of this court were filed therein. Thereupon appellees again filed twenty objections to the confirmation of the assessment and the court entered an order sustaining the objections. Among the objections filed at this time was the objection that the ordinance authorizing the improvement did not specify the nature, character, locality and description of the proposed improvement, and was void for uncertainty, insufficiency and informality, and under these objections certain specifications of the particular defects and informalities charged against the ordinance were set out, and particularly that the ordinance failed to provide the height or grade of the curb and failed to provide or establish any grade for the improvement. The eighteenth objection was, that the Supreme Court of Illinois had declared the ordinance invalid. The nineteenth was, that the contract and specifications for the work were illegal, because they provided that eight hours should constitute a day's labor and the improvements should be constructed by native born or naturalized citizens, which provisions,

appellees urged, were unconstitutional. The order of the court made at the time of the hearing of these objections was as follows: "Now on this day it is ordered by the court that the legal objections to said assessment be and are hereby sustained. It is further ordered that said petioner have leave to file a supplemental petition herein by November 15, 1901."

On November 13, 1901, the petitioner filed a supplemental petition for a new assessment under an ordinance which was passed by the city council of Chicago on November 4, 1901. This ordinance was entitled "An ordinance for a new assessment to pay the unpaid balance of the cost of the improvement of Diversey street," etc. This latter ordinance was passed by the city council on the 4th of November, 1901, and recites the passage of the first ordinance, the estimated cost thereof, the filing of the objections in the county court as docket No. 20,043, the levying of the special assessment, the judgment of confirmation, and that after such confirmation the city "duly let a contract for the making of said improvement and the contractor duly executed the same, and that the work of constructing and making the said improvement was done in good faith and was in compliance with said ordinance and contract, and was thereafter duly accepted by the city of Chicago;" that the total cost of the improvement, exclusive of the cost of the proceeding, was $19,862.41, which sum the contractor was entitled to receive in payment for such improvement, and that vouchers for that sum were issued to said contractor, and that there remained outstanding and unpaid $8828.06 thereof, together with the legal interest thereon, and, computing interest to December 31, 1901, the interest was estimated at $1324.20. The ordinance then recites the appeal to this court, and the holding by this court that the ordinance was defective and insufficient for failing to properly describe the improvement. The ordinance then specifically declares: "Notwithstanding such omission in said ordi-

nance, said curb-stones were firmly bedded upon flat limestone, in strict compliance with the terms of said ordinance." The ordinance further declares that various property holders along said improvement have already paid their assessments, and that equity and justice require that those. having paid their assessments should be relieved from the payment of the deficit. The matters above set forth are all stated in the preamble to the ordinance, which of itself contains but six sections. The first section declares that a new special assessment shall be made and levied as thereinafter specified. The second section of the ordinance provides that the unpaid balance of the cost of improving Diversey street under said ordinance of July 8, 1895, and under said contract, which is hereby found to be $10,152.26, be paid for by special assessment to be levied on property specially benefited thereby to the amount the same may be legally assessed, and as to which the original judgment of confirmation has been set aside, and the remainder of said cost to be paid by general taxation, in accordance with the act of 1897, relating to local improvement. That section expressly provides that no part of the costs of such original proceeding shall be included in or paid from the proceeds of the assessment thereby authorized. It is also provided that the special assessment provided for shall be payable and collectible in one installment, and all property against which there exist valid judgments of confirmation for the original assessments shall be excluded from the new assessment. The ordinance directs that the attorney shall file a petition for proceedings to assess the costs, as above stated, for the improvement.

Under this ordinance the petition was filed and the special assessment made and reported. The assessment roll having been filed and notice given according to statute, appellees appeared and filed thirty-one objections thereto. Among the objections filed were the objections that the original ordinance, under which the improve-

ment was constructed, was incomplete, informal and invalid, and did not specify the nature, character, locality and description of the improvement, in that the flat stones upon which the curb-stones were bedded were not described; that the act under which the ordinance of 1895 was passed was repealed by the act of 1897; that the assessment under the original ordinance was confirmed prior to July 1, 1897, and that after such time, and up to the passage of the act of 1897, there were no such proceedings pending as brought the case within the saving clause; that said original ordinance had been declared invalid by the Supreme Court, and the trial court should therefore dismiss the petition for want of jurisdiction; that the original ordinance was declared void by an order of the county court sustaining objections filed July 3, 1901, from which no appeal had been taken, and which order remained in full force and effect; that the original ordinance was void because the height of the curb to be built was not given, and because it provides that the surface of the pavement shall be at the established grade of the streets, and makes no provision for drains or for a declining grade from the crown of the street to the curb, and is void for the further reason that it makes no provision for catch-basins, man-holes, drains, gutters or street or alley intersections.

The county court, upon a hearing under these objections, made certain special findings of fact, upon three of which, namely, the sixth, seventh and eighth, it expressly predicated its order sustaining the objections of appellees.   These findings were as follows:

"*Sixth*—That the curb-stones in said original ordinance provided for, were bedded upon flat stones in the manner following, to-wit: That one flat limestone block was placed under each end of each curb-stone, but where said curb-stones were of unusual length another flat stone block was placed under the middle of said curb; that the said flat stones did not constitute a continuous line of

stones; that the said flat stones were not sufficiently described in the original ordinance, and that the new or special ordinance did not amend said original ordinance in respect to said flat stones, nor describe the number of flat stones used, nor cure the defects in the original ordinance in that respect, and that for this reason the objections of said objectors based upon the ground that the said original ordinance was defective for failing to sufficiently describe said flat stones, and that this defect was not cured by the new or special ordinance, must be and are sustained.

"*Seventh*—That the curb-stones prescribed in the said original ordinance were set on both sides of the roadway, except across the intersecting streets, with the top of the curb at practically the established grade of said street, the variation of the top of the said curb from said established grade being very slight, if any, but that the original ordinance did not describe or specify the height of said curb and did not except the street intersections aforesaid, and that the new or special ordinance contained no provisions in these respects for curing these defects, and that therefore the objections based upon the failure of the original ordinance to prescribe the height of the curb and to except the street intersections aforesaid, and upon the failure of the ordinance to amend the said original ordinance or otherwise cure said defect, must be and are sustained.

"*Eighth*—That the pavement was constructed with the center of the finished roadway surface substantially at the established grade of the street, and that it sloped from the center each way toward the gutter, so that the surface of the roadway along the line of the gutter was below the top of the curb and the established grade of the street,—a distance of about four inches at the summit of the gutter midway between catch-basin inlets and about twelve inches below at the said inlets,—but that the original ordinance did not sufficiently describe the

pitch or the slope of the gutters and pavements afore-
said, and that the new or special ordinance did not amend
said original ordinance in this respect or cure said de-
fects, and that the objections to the assessment based
upon the defects in said original ordinance above de-
scribed, and upon the fact that the said defects were
not amended or cured in the said new ordinance, must
be and are sustained."

The county court entered its order in the following
words: "In consideration of the premises the court doth
accordingly order and adjudge that said legal objections
of the said objectors above named, in the foregoing sixth,
seventh and eighth paragraphs hereof, be and the same
are hereby sustained, and that the petition for the confir-
mation of said new assessment be and the same is hereby
dismissed as to the property of said objectors.   To the
entry of which order the petitioner, by its counsel, duly
excepts and prays an appeal to the Supreme Court of
Illinois, which is allowed, to the allowance of which said
appeal the objectors except."

Appellant assigns six grounds of error, and cross-
errors were also assigned by appellees.   Appellant's
grounds of error are: (1) That the court erred in sustain-
ing the objections based upon the ground that the origi-
nal ordinance was defective for-failure to sufficiently
describe the flat stones placed under the curb-stones, and
that the supplemental ordinance did not cure its defect;
(2) upon the ground that the original ordinance failed to
prescribe the height of the curb and to except the street
intersections, and the failure of the supplemental ordi-
nance to amend the original ordinance in that behalf;
(3) upon the ground that the original ordinance herein
did not sufficiently describe the pitch or the gutters of
the pavement, and that the same was not amended by
the new or additional ordinance; (4) the court erred in
sustaining the objection that interest upon the unpaid
vouchers should not be included as a part of the costs

of the improvement; (5) in dismissing the petition and in not overruling all objections filed. Appellees' cross-errors are, that the court erred in not sustaining all the legal objections filed and in not dismissing the case for want of jurisdiction; in finding that the improvement was constructed in a workmanlike manner and was accepted by the proper officers of the city of Chicago; in finding that the street was sufficiently rolled by the use of a five-ton roller instead of by the use of a ten-ton roller, as provided by the ordinance; in not finding that the contractor violated the statute in relation to aliens, and in allowing the appeal.

EDGAR B. TOLMAN, and ARMAND F. TEEFY, (CHARLES M. WALKER, of counsel,) for appellant.

GEORGE W. WILBUR, for appellees.

Mr. JUSTICE RICKS delivered the opinion of the court:

A motion was made in this court to dismiss this appeal for want of jurisdiction, upon the ground, first, that appellant had no right of appeal; and secondly, upon the ground that the judgment of the county court entered July 3, 1901, sustaining objections to the assessment under the original ordinance, pursuant to the remanding order of this court, was *res judicata.*

In support of their motion to dismiss, appellees cite and rely upon sections 95 and 96 of the act of 1897, in relation to local improvements by special assessments and special taxation. (Hurd's Stat. 1901, p. 399.) Section 95 relates to appeals and section 96 relates to writs of error. Section 95 by its language authorizes an appeal to the Supreme Court "by any of the owners or parties interested in lands taken, damaged or assessed therein," and section 96 authorizes a writ of error from this court on the application of "owners or parties interested in the property affected thereby," and it is said that as in each

of these sections the only persons named are the owners of the lands or parties interested therein, there is no statutory authority for the city to prosecute this appeal, and that, the right of appeal being a statutory right, the appeal should be dismissed. The question here urged was before this court in the case of *City of Bloomington* v. *Reeves*, 177 Ill. 161, where the statute cited by appellees and the various statutes authorizing appeals were reviewed and fully considered, and Mr. Justice CRAIG, speaking for the court, in part said (p. 163): "It is apparent that there is no provision of the act which authorized the city, when it happened to be defeated in the county court, to appeal, and if the right of appeal depended solely on the act under which the proceeding was instituted, then the appeal could not be maintained. But we do not think that the right of the city of Bloomington to appeal depends on the act. Section 213 of the act relating to courts (Hurd's Stat. 1897, p. 527,) provides: 'Appeals and writs of error may be taken and prosecuted from the final orders, judgments and decrees of the county court to the Supreme Court or Appellate Court in proceedings for the confirmation of special assessments, in proceedings for the sale of lands for taxes and special assessments, and in all common law and attachment cases, and cases of forcible detainer and forcible entry and detainer.' (See, also, sec. 89, chap. 110, p. 1217.) These sections of the statute, which expressly allow either party an appeal in a case like the one under consideration, have never been repealed, and under them the city of Bloomington had the right of appeal. If the legislature had intended to cut off all right of appeal on behalf of a city where it was defeated in the county court, these two sections of the statute doubtless would have been modified or repealed. This not having been done, it will be presumed the legislature intended to preserve the right of appeal in the city as it existed heretofore. The motion to dismiss the appeal will be denied."

As to the second ground upon which this motion is predicated, we cannot yield our consent to the contention of appellees. The case having been brought to this court upon appeal by appellees, we held the ordinance defective and reversed the judgment of the county court confirming the assessment under that ordinance and remanded the cause to the county court. When the cause was re-docketed appellees again filed objections, which the county court, following the decision of this court reversing the cause, sustained and entered its order to that effect, but at the same time and as a part of the same order gave leave to appellant to file a supplemental petition. It does not appear that there were hearings upon any matters of fact at that time, and the order itself shows, as we think, that the court sustained the objections in obedience to and in conformity with the judgment of this court remanding the cause, and that such judgment, when entered in pursuance of such remanding order, cannot now be said to be such a final judgment, if not appealed from, as could be relied upon as *res judicata.* To hold otherwise would be to say that there could never be an end of appeals. The motion to dismiss was denied, and upon mature reflection we are satisfied that the order was proper.

The insistence that, inasmuch as the assessment under the original ordinance was confirmed in December, 1895, there was no cause pending to bring the case within the saving clause found in section 99 of the act of 1897 is not tenable, if we are able to comprehend the point made by counsel or the line of their argument. From the judgment confirming that special assessment an appeal was prosecuted and pending in this court when the act of 1897 was passed, and the cause was as much pending as if it had remained in the county court and undisposed of all that time.

Appellant relies upon sections 57 and 58 of the Local Improvement act of 1897 as the authority for the ordi-

nance and assessment now appealed from. Those sections are as follows:

"Sec. 57. *Vacation of assessment—New assessment.*] If any assessment shall be annulled by the city council or board of trustees, or set aside by any court, a new assessment may be made and returned, and like notice given and proceedings had as herein required in relation to the first; and all parties in interest shall have like rights, and the city council or board of trustees, and the court, shall perform like duties and have like power in relation to any subsequent assessment as are hereby given in relation to the first assessment.

"Sec. 58. *New assessment for completed work.*] No special assessment shall be held void because levied for work already done under a prior ordinance, if it shall appear that such work was done in good faith, by the contract duly let and executed, pursuant to an ordinance providing that such improvement should be paid for by special assessment or special tax. This provision shall only apply when the prior ordinance shall be held insufficient for the purpose of such assessment, or otherwise defective, so that the collection of the assessment therein provided for becomes impossible. A new or special ordinance shall in such case be passed, providing for such assessment, and such ordinance need not be presented by the board of local improvements."

To authorize an ordinance for a new assessment under the foregoing sections it must appear (*a*) that the work was done in good faith by contract duly let and executed pursuant to an ordinance providing that such improvement should be paid for by special assessment; (*b*) that the prior ordinance shall be held insufficient for the purpose of such assessment, or otherwise defective, so that the collection of the assessment therein provided for becomes impossible; (*c*) that the original assessment be set aside by some court; (*d*) that a new or special ordinance be passed providing for such new assessment; (*e*) that a

new assessment be made and returned and like notice given and proceedings had as are required in relation to the first ordinance and assessment, except that the same need not be originated or presented by the board of local improvements.

Appellees, however, say that the work under the original ordinance was not done in good faith, and in support of that contention show certain deviations in the performance of the work from the strict letter of the ordinance. For instance, it is said by the ordinance that the pavement should be rolled by ten-ton rollers, and the evidence discloses that it was rolled by a five-ton roller. The provision of section 58, *supra,* is, that a new assessment to pay for the improvement shall be made and shall not be held void "if it shall appear that such work was done in good faith, by the contract duly let and executed, pursuant to an ordinance providing that such improvement should be paid for by special assessment." The record shows the prior ordinance, the letting of the contract and the performance of it to the satisfaction of the city authorities and the full acceptance of the work by the city, and there is no evidence showing bad faith on the part of the contractor. Wherever there was a deviation from the strict letter of the ordinance, contract and specifications, as to the manner of performing the work, it was upon a good and sufficient reason appearing in the record, of which the city had notice and to which it assented. As an instance, the ten-ton roller could not be used because the nature of the soil and the foundation required by the ordinance and contract were such that the blocks would be pressed out of place and the pavement made uneven by such great weight. The inspectors were advised of this and assented to the use of a five-ton roller. The evidence shows such roller to have been the proper one to use in that particular work, and the county court was warranted in finding that the work was done in "a good and workmanlike manner."

Appellees object to this proceeding, and say that by the order of court appellant was authorized to file a *supplemental petition*, and from that argue that the legal inference arises that the court only authorized a petition to be filed under section 59 of the Local Improvement act, which relates to supplemental assessments where the first assessment proved insufficient, and they insist that there is a conflict between the order of the court and the ordinance and petition that were filed. Appellees' counsel says: "I do not think that the terms 'new assessment' and 'supplemental assessment' are interchangeable. A new assessment is not provided for under section 58 of the act referred to, while the authority for a supplemental assessment is contained in section 59." A supplemental petition would be any petition filed subsequent to the original petition and in aid of the same improvement. Counsel for the appellees seems to confound supplemental petition and supplemental assessment, and attempts to contrast supplemental petition and new assessment. The court could only allow a supplemental petition to be filed that should be authorized by the statute, and the one authorized under the conditions of the case, as it was then passed upon, was under sections 57 and 58 for a new assessment, on the ground that the assessment had been set aside by the court. The supplemental petition was for a new assessment in supplement and aid of the first assessment, part of which had been set aside. It does not matter what was the cause of setting aside the original assessment or the particular defects thereof that caused the deficit. If the facts and record were such that a new assessment was authorized to pay for the work already done, then that matter was properly brought before the court by a supplemental petition.

It is next urged that the original ordinance was declared void by this court, and that a void ordinance can not serve as a basis for a new ordinance calling for a

new assessment. If the contention as to the fact is true, the position as to the law will be admitted. But such does not seem to be the fact from an inspection of this record. The original ordinance was held to be defective—not void. The opinion of this court does not state whether it is defective or void, but decides the case upon the authority of *Kuester* v. *City of Chicago*, 187 Ill. 21, in which it is said that the ordinance is defective. A careful reading of the cases in which this court has passed upon this and like ordinances will show that for mere inaccuracies of description such ordinances have not been held void, but that they have been held so defective that it was proper to refuse a confirmation of the assessment upon that ground. The question has frequently arisen in special assessment cases where application was made for judgment to sell property, and defects such as were in the original ordinance in question here were urged as grounds of defense against the entering of judgment, on the ground that the ordinances were void. We have held that where the ordinance is void it may be collaterally attacked, but where it is only defective a judgment of confirmation thereon cannot be attacked on an application for judgment for sale. (*Blount* v. *People*, 188 Ill. 538; *Foster* v. *City of Alton*, 173 id. 587; *Gross* v. *People*, 172 id. 571; *Rich* v. *City of Chicago*, 187 id. 396.) The matters complained of against the original ordinance in question were purely matters of description and were not matters of substance, and the judgment of this court was that the ordinance was defective. It will be presumed that all the objections that could have been urged against the original ordinance were urged against it on that appeal, and we will not again examine it to determine if there might not be other objections. The rule that cases shall not be tried by piecemeal is a necessary rule and one that obtains in all courts of appeal, and where, as in this case, on appeal, the validity of the ordinance was attacked and passed upon, the court will not in another appeal

take up the same ordinance again and review it and pass upon the validity of its provisions.

It is next insisted that the new ordinance did not amend the defects of the first or original ordinance, and that the same defects in the description of the proposed improvement remained without any ordinance supplying them, and that for that reason the judgment of the county court should be sustained. There is no contention that the improvement was not placed upon the street and between the points designated by the original ordinance or that it was not of the general character therein provided for, but it is said that the work was not done in strict compliance with the provisions of the first ordinance and that there was no ordinance providing for portions of the work as done, and under this head are pointed out the making of gutters, catch-basins and intersections of streets. It is also said that the work was not performed in strict compliance with the provisions of the original ordinance, in that some of the curbing line was irregular and that the curbing leaned an inch or two toward the street, and that there were cracks in the pavement, and that the roller used was a five-ton roller instead of a ten-ton roller. These matters relating to mere defects in workmanship could hardly be urged against the validity of an ordinance or the right to make a new assessment to pay for whatever was done and accepted by the city. Appellees, in their objections set up at the time of the filing of the mandate from this court, expressly declared that the work had been completed and accepted by the city and that vouchers had been issued to and accepted by the contractors, and urged these matters as grounds for not confirming the assessment; and upon a hearing of the cause now before the court under the new ordinance, the evidence fully shows that the work was duly accepted by inspectors employed by the city and was pronounced by them as being done in compliance with the ordinance and specifications, and was fully accepted

by the city as satisfactorily done and vouchers were issued for the payment. ·The evidence also explains, as we think, all the departures from the strict letter of the specifications and contract, and shows that it was complied with as strictly as the conditions of the soil and location of the work would admit. But, at all events, we do not see how these mere departures in the details of the work or the manner of performing it could be a bar to this proceeding for the new assessment if the work was in fact acceptably done in accordance with the plans and specifications and accepted by the city, and the judgment of the county court expressly finds "that said improvement was constructed in a good and workmanlike manner and was accepted by the proper officers of the municipality, the city of Chicago," and the new ordinance contains a like declaration. Manifestly, those things could not be cured by any ordinance that could be passed by way of amendment. The matters of description of the character of the work, as to street intersections, and the top of the grade line, curb, and the description of the flat stones upon which the curb was to rest, might have been amended and more specifically set out by the second ordinance, but we can see no beneficial purpose that would have been served by such amendment. The work was already done. The improvement was in, and any ordinance that sought to amend the first ordinance would have been one simply describing the improvement as made. In the case of *Markley* v. *City of Chicago,* 190 Ill. 276, there were other defects than the selection of improper commissioners alleged against the ordinance, and among them was the defect that the flat stones were not particularly described in the original ordinance and that the new ordinance did not attempt to amend the old in that regard, and we said of it (p. 282): "We do not see how it would benefit appellant to have these stones now particularly described by way of amendment. The improvement has actually been made and

the exact kind and size of the flat stones have been determined by the improvement actually in place. It would not tend to the protection of the appellant or any other property owner by requiring the amendment of the original ordinance in a minor matter of detail, such as setting out the kind or size of the flat stones."

The complaint in the case at bar that the street intersections were not excepted when the curbing was provided for seems to us to fall within the same class of objections and defects. It would be hard to conceive of a contractor who had so little intelligence as one that would bid upon a public improvement, like the paving of a street, and not know that the curbs on the sides of the street were not to extend across street intersections. The evidence shows that they were not put there, but that they were put as they should have been,—to the street lines. The *Markley case* was very much like the case at bar, and did not go to the extent, even by way of recital or otherwise, of describing the former ordinance and the proceedings had under it, that the ordinance now before us does. We have held in other cases besides the *Markley case* that it is not necessary to describe the improvement by the new ordinance. *West Chicago Park Comrs.* v. *Farber*, 171 Ill. 146; *Freeport Street Railway Co.* v. *City of Freeport*, 151 id. 451.

When the case was re-docketed in the county court and the mandate of this court was filed there, the objection was filed and insisted upon that the proceeding was invalid because the contract provided that eight hours should constitute a day's labor and that none but native born or naturalized citizens should be employed upon the work. It is now insisted by appellees that the proceedings are void and that this ordinance cannot be sustained because paragraph 10 of chapter 6 of our statutes, entitled "Aliens," was not complied with. (Hurd's Stat. 1901, p. 141.) That paragraph provides that "it shall be unlawful for any * * * officer * * * acting for * * *

any city, * * * or any contractor, or sub-contractor, under any or either of said municipalities, to employ any person or persons, other than native born or naturalized citizens, or those who have in good faith declared their intentions to become citizens of the United States, when such employees are to be paid, in whole or in part, directly or indirectly, out of any funds raised by taxation." Paragraph 11 of the same statute requires any one employing labor to be paid out of the public funds, to make a list of the persons so employed, showing that they meet the requirements of the foregoing paragraph, and paragraph 12 fixes a penalty for a violation of paragraph 11. Appellees took evidence showing that this statute was not complied with, and insist that as these public funds go to the contractor who violated that law, the ordinance cannot be sustained. A similar law was enacted by ordinance in the city of Chicago, and we have repeatedly held that such law is invalid, as it is in contravention of the constitution and the right of individuals to contract. The statute in question is void upon the same grounds, and neither the city nor the contractor was under any obligation to observe it.

In the preamble to the ordinance in question it was found that there was a balance of $8828.06 due for the work and that there was interest to the amount of $1324.20, and the ordinance in question provided for the levying of an amount sufficient to pay both the principal sum and the interest thus due. The vouchers issued by the city were non-interest bearing vouchers, and there was no authority, in law, for paying interest upon them. It may be that it was an equitable thing to do, but such considerations cannot control in a statutory proceeding. The ordinance sufficiently specifies the portion that is for interest, so that it may be separated from the principal sum that was unpaid, and we think that in so far as it attempted to levy an assessment for interest the ordinance was void, but that as the amounts are expressly

stated by the ordinance itself, so that the portion that is void or the amount which is levied without authority can be ascertained by an inspection of the ordinance, it is unnecessary to declare the whole ordinance void on that account. Under section 52 of the Local Improvement act the court had authority to modify and change the assessment by refusing to confirm that portion of it that was sought to be collected as interest and affirm it as to the amount that was due upon the work.

In the view that we entertain of the case the judgment of the county court will be reversed and the cause remanded for further proceedings not inconsistent with this opinion.                    *Reversed and remanded.*